PALOMA P. PERACCHIO, CA Bar No. 259034
paloma.peracchio@ogletree.com
MELIS ATALAY, CA Bar No. 301373
melis.atalay@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA  90071
Telephone:   213-239-9800
Facsimile:   213-239-9045

MITCHELL A. WROSCH, CA Bar No. 262230
mitchell.wrosch@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
Park Tower, Fifteenth Floor
695 Town Center Drive
Costa Mesa, CA  92626
Telephone:   714-800-7900
Facsimile:   714-754-1298

Attorneys for Defendant
WAL-MART ASSOCIATES, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSARIO CASILLAS, individually, and on behalf of other members of the general public similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>WAL-MART ASSOCIATES, INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. _____<br><br>**DEFENDANT WAL-MART ASSOCIATES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>[Filed concurrently with Civil Cover Sheet; Certification of Interested Parties and Disclosure Statement; Declarations of Melis Atalay and Laura Kish in Support of Removal]<br><br>Complaint Filed: May 15, 2025 |

TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF ROSARIO CASILLAS AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT Defendant Wal-Mart Associates, Inc. ("Defendant"), by and through the undersigned counsel, hereby removes the above-entitled action from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California pursuant to 28 U.S.C. Sections 1332, 1441, 1446, and 1453. As discussed below, this Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA"). In support of such removal, Defendant states as follows:

## I. THE STATE COURT ACTION

1. On May 15, 2025, plaintiff Rosario Casillas ("Plaintiff") filed a Class Action Complaint ("Complaint") in the Superior Court of the State of California, County of Los Angeles entitled *Rosario Casillas, individually and on behalf of other members of the general public similarly situated, Plaintiff v. Wal-Mart Associates, Inc., a Delaware Corporation; and Does through 100, inclusive, Defendants*, which was assigned case number 25STCV14537 (the "State Court Action").

2. The Complaint brings putative class claims for an alleged: (1) Unpaid Overtime Wages; (2) Unpaid Meal Period Premiums; (3) Unpaid Rest Period Premiums; (4) Unpaid Minimum Wages; (5) Final Wages Not Paid Timely; (6) Wages Not Timely Paid During Employment; (7) Non-Compliant Wage Statements; (8) Failure to Keep Requisite Payroll Records; (9) Unreimbursed Business Expenses; (10) Unfair and Unlawful Business Practices.

3. On June 3, 2025, Defendant was served with the following documents via its agent for service of process: a summons; the complaint; Civil Case Cover Sheet; Civil Case Cover Sheet Addendum and Statement of Location; Notice of Case Assignment to Department 6; Instructions for Handling Unlimited Civil Cases; Alternative Dispute Resolution (ADR) Information Package; of Assignment to

1  Department 09 for Case Management Determination; Unlimited Jurisdiction Civil
2  Actions Packet; Stipulation – Early Organizational Meeting (Blank); Stipulation –
3  Discovery Resolution (Blank); Stipulation and Order – Motions *in Limine* (Blank);
4  Order Pursuant to CCP 1054(a) Extending Time to Respond by 30 Days When Parties
5  Agree to Early Organizational Meeting Stipulation; First Amended General Order. A
6  true and correct copy of the Complaint is attached as **Exhibit A** to this Notice of
7  Removal. Declaration of Melis Atalay ("Atalay Decl.") ¶ 3.

8      4.    As further required by 28 U.S.C. § 1446(a), Defendant hereby provides
9  this Court with copies of all process, pleadings, and orders received by Defendant in
10 this action. True and correct copies of these documents are attached as **Exhibit B** to
11 this Notice of Removal. Defendant has not been served with any pleadings, process,
12 or orders in the State Court Action besides those attached. Atalay Decl. ¶ 4.

13     5.    Plaintiff has not yet identified any of the fictitious "Doe" defendants
14 named in the Complaint, and the citizenship of "Doe" defendants is disregarded for
15 the purposes of removal. 28 U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811
16 F.2d 1336, 1339 (9th Cir. 1987).

17     6.    This Notice of Removal is timely filed as it is filed less than one year
18 from the date this action was commenced and within 30 days of the service upon
19 Defendant. 28 U.S.C. § 1446(b); *Murphy Bros., Inc v. Michetti Pipe Stringing, Inc.*,
20 526 U.S. 344 (1999) (30-day deadline to remove commences upon service of the
21 summons and complaint).

22 **II.    THIS COURT HAS JURISDICTION UNDER THE CLASS ACTION**
23     **FAIRNESS ACT**

24     7.    This Court has original jurisdiction over this matter under CAFA, and the
25 matter may be removed by Defendant pursuant to 28 U.S.C. §§ 1441 and 1453 because
26 the number of potential class members exceeds 100, the parties are citizens of different
27 states, and the amount in controversy exceeds the aggregate value of $5,000,000. *See*
28

28 U.S.C. §§ 1332(d)(2) and (d)(6).[1]

A. The Size of the Putative Class Exceeds 100

8. In her Complaint, Plaintiff defines the proposed class as: "all current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint [May 15, 2025] to final judgment." Exh. A ¶ 13.

9. Defendant's employment records show that there are hundreds of thousands of current and former employees who fall within Plaintiff's proposed class. Between May 15, 2021 and May 21, 2024,[2] Defendant has employed at least 218,650 non-exempt employees in the State of California. Kish Decl. ¶ 4.

B. The Parties Are Diverse

10. Citizenship of Defendant. Defendant is a corporation. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." Defendant is incorporated in the State of Delaware and its principal place of business is in Bentonville, Arkansas. *See* Kish Decl. ¶ 3. Thus, Defendant is a citizen of Delaware and Arkansas.

---

[1] Defendant recently successfully removed numerous other California wage-and-hour putative class actions on the basis of the Class Action Fairness Act—*i.e.*, there exists minimal diversity and the amount in controversy exceeds five million. *See, e.g.*, *Villatoro v. Wal-Mart Associates, Inc., et al.*, Case No. 4:25-cv-01870 (N.D. Cal., Feb. 21, 2025), later transferred to the United States District Court for the Central District of California, where it is currently pending before Hon. Wright, Case No. 2:25-cv-04448; *Bansal v. Wal-Mart Associates, Inc.*, Case No. 3:22-cv-01932-BEN-DDL (S.D. Cal., Dec. 7, 2022); *Gomez v. Wal-Mart Associates, Inc.*, Case No. 2:22-cv-06051 (C.D. Cal., Aug. 25, 2022); *Guzman v. Wal-Mart Associates, Inc.*, Case No. 5:21-cv-09133-NC (N.D. Cal., Nov. 24, 2021); *Carlos v. Wal-Mart Associates, Inc.*, Case No. 5:21-cv-00294 (C.D. Cal., Feb. 22, 2021); *Hernandez v. Wal-Mart Associates, Inc.*, Case No. 5:21-cv-166 (C.D. Cal., Jan. 28, 2021); *Powell et al. v. Walmart, Inc. et al.*, Case No. 3:20-cv-02412-BEN-LL (S.D. Cal., Dec. 10, 2020) *remand denied* on February 3, 2021.

[2] These are data points relied upon in Walmart's notice to remove the *Villatoro* action. (See ECF No. 1 *Villatoro, supra*, Case No. 4:25-cv-01870 (N.D. Cal., Feb. 21, 2025). Defendant reserves the right to provide evidence concerning the number of putative class members through present day in opposition to any remand motion.

11. Defendant is neither incorporated in California, nor is its principal place of business in California. Accordingly, for purposes of determining diversity, Defendant is regarded as a citizen of Arkansas and Delaware, and not a citizen of California.[3]

12. <u>Citizenship of Plaintiff and putative class members</u>. For diversity purposes, an individual is a "citizen" of the state in which he is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). An individual's domicile is the place he resides with the intention to remain or to which he intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

13. The Complaint alleges that Plaintiff "is an individual residing in the State of California, County of Los Angeles." Exh. A ¶ 5. Thus, Plaintiff is a citizen of the State of California.

14. Members of the proposed class, who by definition are or were employed in California, are presumed to be primarily citizens of the State of California. Exh. A ¶ 13; *see, e.g.*, *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("place of employment" is an important factor weighing in favor of citizenship). Thus, even if Plaintiff was somehow a citizen of Arkansas or Delaware (and there is no evidence or allegations that she is), there is no possible way that the hundreds of thousands of putative class members, all of whom worked in California (Exh. A ¶ 13), were also citizens of Arkansas or Delaware.

15. Accordingly, the minimal diversity of citizenship requirements under 28 U.S.C. § 1332(d)(2) are met because Defendant is a citizen of Arkansas and Delaware while Plaintiff is a citizen of California.

C. <u>The Amount in Controversy Exceeds an Aggregate of $5,000,000.</u>

16. Plaintiff has not alleged a specified amount in controversy for the putative

---

[3] The citizenship of fictitiously named "Doe" defendants is disregarded for purposes of removal. 28 U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

class allegations in the Complaint. *See generally* Exh. A.

17.     "CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015). A defendant is required to file a notice of removal that includes only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens,* 135 S. Ct. 547, 554 (2014).

18.     In considering whether a removal notice is appropriate, the Court must "look beyond the complaint to determine whether the putative class action meets the [amount in controversy] requirements," adding "the potential claims of the absent class members" and attorneys' fees. *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 185 L.Ed. 2d 439 (2013)); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 705 (9th Cir. 2007). Furthermore, "[i]n considering whether the amount in controversy is clear from the face of the complaint, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Altamirano v. Shaw Indus., Inc.*, C-13-0939 EMC, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz*, 2007 WL 1302504, at *3.

19.     While Defendant denies the validity of Plaintiff's claims and requests for relief, and while Defendant does not concede in any way that the allegations in the Complaint are accurate, that Plaintiff's claims are amenable to classwide treatment, or that Plaintiff or the purported class is entitled to any of the requested relief, the allegations in the Complaint show it is more likely than not that the amount in controversy exceeds the jurisdictional minimum. *See Guglielmino*, 506 F.3d at 700.

20.     In determining the amount in controversy to support its Notice of Removal, Defendant relies here on a conservative estimate based only on damages

sought by Plaintiff as a result of her Fifth Cause of Action for Final Wages Not Timely Paid and her Seventh Claim for Non-Compliant Wage Statements. Because the amounts in controversy <u>for these two claims alone</u> exceed the jurisdictional minimum requirement of $5 million, Defendant does not include additional analyses for estimates of the amounts placed in controversy by Plaintiff's seven other causes of action as alleged in the Complaint, including potential damages sought for the alleged violations of: (1) Unpaid Overtime Wages; (2) Unpaid Meal Period Premiums;[4] (3) Unpaid Rest Period Premiums; (4) Unpaid Minimum Wages; (5) Wages Not Timely Paid During Employment; (6) Non-Compliant Wage Statements; (7) Failure to Keep Requisite Payroll Records; (8) Unreimbursed Business Expenses; (9) Unfair and Unlawful Business Practices; or (10) attorneys' fees that Plaintiff requests in connection with her claims (*see e.g.*, Exh. A ¶¶ 55, 117; Prayer for Relief ¶¶ 8, 15, 27, 51) even though such is properly considered for determining the amount in controversy for removal purposes. *See Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (holding that when an award of attorneys' fees is authorized by statute, the request for attorneys' fees is properly considered in determining the amount in controversy for removal purposes). That said, Defendant reserves the right to do so in opposition to any remand motion.

21. **<u>The amount placed into controversy by Plaintiff's waiting time penalties claim exceeds the jurisdictional minimum</u>**. In her Fifth Cause of Action, Plaintiff alleges that "during the relevant time period, Defendants intentionally and willfully failed to pay Plaintiff and the other class members who are no longer employed by Defendants their earned and unpaid wages within seventy-two (72) hours

---

[4] Defendant notes that, in the related *Hernandez* matter, counsel for plaintiff Hernandez argued that the plaintiff's putative meal period class claim (which appears similar to the meal period theory pursued in this Action) implicated at least $67,500,000.00 in allegedly unpaid meal period premiums. *Hernandez v. Wal-Mart Associates, Inc.*, Case No. 5:21-cv-166, ECF No. 64-1, p. 22 (C.D. Cal., May 26, 2023).

of leaving Defendants' employ. [¶] Defendants' failure to pay Plaintiff and other class members their earned and unpaid wages within seventy-two (72) hours of their leaving Defendants' employ is in violation of California Labor Code sections 201 and 202." Exh. A, ¶¶ 84-85. Plaintiff further alleges that "Plaintiff and other class members are entitled to recover from Defendants the statutory penalty wages for each day they were not paid, up to a thirty (30) day maximum pursuant to California Labor Code section 203." Exh. A, ¶ 87.

22. Plaintiff alleges that her "claims are typical of all other class members." Ex. A, ¶ 15(b). Thus, per the allegations of Plaintiff's Complaint, all putative class members of Defendant who are former employees were allegedly underpaid wages at separation.

23. Section 203 penalties "accrue not only on the days that the employee might have worked, but also on nonwork days," for up to 30 days, and the accrual of these penalties "has nothing to do with the number of days an employee works during the month." *Mamika v. Barca*, 68 Cal. App. 4th 487, 492-93 (1998). As the "targeted wrong" addressed by Section 203 is "the delay in payment" of wages, that wrong "continues so long as payment is not made"; therefore, "[a] proper reading of section 203 mandates a penalty equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days." *Id*. at 493.

24. Here, Plaintiff's Section 203 claim is not premised only on the theory that Defendant failed to timely deliver final paychecks to terminated employees; rather, Plaintiff contends that Defendant owes penalties at least in part as a result of its purported failure to pay all wages and meal period and rest break premiums due and owing during their employment, which, according to the Complaint, were not paid to putative class members as a matter of "pattern and practice." Exh. A, ¶¶ 25-31; *see* ¶ ¶ 25 ("Defendants engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees within the State of California. This pattern and practice involved, *inter alia*, failing to pay them for all regular and/or overtime wages earned

and for missed meal periods and rest breaks in violation of California law); ¶ 31 ("Defendants knew or should have known that Plaintiff and the other class members were entitled to receive all wages owed to them upon discharge or resignation, including overtime and minimum wages and meal and rest period premiums, and they did not receive all such wages owed to them at the time of their discharge or resignation.").

25. It is therefore reasonable to calculate the amount in controversy for this claim based on a 30-day penalty calculated at each former employee's daily wage rate. *See, e.g., Mackall v. Healthsource Global Staffing, Inc.*, 2016 WL 4579099, at *5-*6 (N.D. Cal. Sept. 2, 2016) (approving 100% violation rate in calculating waiting time penalties on removal which are based on allegation that Defendant had a "pattern and practice" to not pay overtime wages due); *De Vega v. Baxter Healthcare Corp.*, 507 F. Supp. 3d 1214, 1218 (N.D. Cal. 2019) (holding that assumed maximum waiting time penalties "was completely reasonable"; "If the gravamen of the allegation were that Baxter was sometimes tardy in providing final paychecks, then indeed it would not be reasonable to assume that nearly all employees did not get their final paychecks for 30 or more days. De Vega's theory, however, plainly is that putative class members were owed (and are still owed) pay for overtime and missed meal and rest breaks, even if their final paychecks were otherwise timely delivered. Thus, it is completely reasonable to assume waiting time penalties accrued to the thirty-day limit because of those unpaid sums"); *Ford v. CEC Entm't, Inc.*, 2014 WL 3377990 (N.D. Cal. July 10, 2014) (same; CAFA amount in controversy satisfied in part by waiting time penalties; "Assuming a 100% violation rate is thus reasonably grounded in the complaint....Because no averment in the complaint supports an inference that these sums were ever paid, Ford cannot now claim class members may be awarded less than the statutory maximum."); *Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 906, 912 (N.D. Cal. 2016) (approving assumption on removal that each employee would be entitled to maximum statutory penalty for 30 days).

26. The applicable statute of limitations for a waiting time penalties claim is three years. Cal. Code Civ. Proc. §338(a). Thus, the time period at issue for this claim begins May 15, 2022.

27. Defendant's calculation of Plaintiff's claim for waiting time penalties for failure to timely pay all wages upon termination results in exposure of at least **$8,387,910** (93,199 x 30 days x 4 hours x $15 x 0.05). The calculation of the amount in controversy is based on a conservative calculation that at least 93,199 California non-exempt employees were separated from employment with Defendant between May 15, 2022 and **May 20, 2024** (*i.e.*, less than two-thirds of the applicable statute of limitations), that **only 5%** of these putative class members is owed some amount of unpaid wages and/or unpaid meal break and/or rest period premiums, that the full 30 days applies to the waiting time penalty, that a "day" for the purpose of the waiting time penalty constitutes of **only four work hours**, and that each putative class member earned an hourly rate of **$15.00 per hour**, which was the minimum wage rate in California in 2022. Kish Decl. ¶¶ 5-6. *See Murillo v. Target Corporation*, 2023 WL 4553597, at *8 (C.D. Cal. July 14, 2023) ("it strains credulity that Plaintiffs would file a class action based on even more conservative estimates, *e.g.*, a violation rate significantly less than 5 percent.") Indeed, even assuming that all terminated class members worked just 15 minutes per day, the amount-in-controversy is over two times the jurisdictional minimum of $5 million. ($10,484,887.5 = 93,199 x 30 days x 0.25 hours x $15). Defendant reserves the right to supplement its calculations in opposition to a remand motion, including by providing additional evidence about the total number of putative class members who were terminated during the statutory period rather than the truncated period used for purposes of this removal notice; their actual hourly rates at the time of termination rather than the 2022 minimum hourly wage rate used for purposes of this removal notice; and their average hours worked per day rather than the conservative estimate of just four hours of work.

28. Consequently, the amount placed in controversy by the Waiting Time

Penalties Claim is at least **$8,387,910**, which exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

29. **<u>The amount placed into controversy by Plaintiff's inaccurate wage statement claim exceeds the jurisdictional minimum</u>**. In her Seventh Cause of Action, Plaintiff alleges that Defendant failed to provide accurate wage statements as required by California Labor Code section 226 *et seq*. Exh. A ¶¶ 94-100.

30. Plaintiff asserts that as a result of Defendant's alleged failure to provide wage statements in compliance with California law, Plaintiff and the putative class are entitled to statutory penalties pursuant to Labor Code § 226(e). Exh. A ¶ 99. In turn, Labor Code § 226(e) allows a plaintiff to seek penalties of: $50 per employee for the initial pay period in which a section 226(a) violation occurs; and $100 per employee for each subsequent pay period, not to exceed an aggregate penalty of $4,000 per employee. Cal. Labor Code § 226(e)(1).

31. The applicable statute of limitations for an inaccurate wage statement claim pursuant to Labor Code § 226 is one year. Cal. Code Civ. Proc. §340(a). Thus, the time period at issue for this claim begins May 15, 2024.

32. Here, it is appropriate to assume a 100% violation rate because of the Complaint alleges, in part, that wage statements were inaccurate because they did not "include the total number of hours worked by Plaintiff and other class members," which is derivative of the Complaint's allegation that Walmart engaged in a "pattern and practice [that] involved, inter alia, failing to pay them for all regular and/or overtime wages earned…" (Exh. A at ¶¶ 25, 96.) The Complaint also alleges that "Plaintiff's claims are typical of all other class members'…" (Ex. A at ¶ 15(b)) (emphasis added.) The Complaint's allegations can thus reasonably be interpreted as alleging that every wage statement issued during the relevant timeframe was inaccurate, *i.e.*, a 100% violation rate. *See, e.g.*, *Baker v. Propak Logistics, Inc*., 2019 WL 4168998, at *4 (C.D. Cal. Sept. 3, 2019); *Mendoza v. Nat'l Vision, Inc*., 2019 WL 2929745, at *6 (N.D. Cal. July 8, 2019) (approving of 100% wage statement violation

rate where plaintiff's complaint alleged that "throughout the relevant period," Defendant "issued "wage statements [that] inaccurately report the number of hours worked, the number of overtime hours worked, gross wages earned, net wages earned and deductions"); *Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at *4 (C.D. Cal. June 22, 2017) (holding that an assumption of a 100% violation rate is reasonable in an amount-in-controversy calculation where Plaintiff made allegations that were "susceptible to broad interpretations."); *Gipson v. Champion Home Builders, Inc.*, 2020 WL 4048503, at *8 (E.D. Cal. July 20, 2020) (100% assumed violation rate was reasonable based on reasonable assumption that class members suffered at least one violation of meal or rest break violations per pay period); *Altamirano v. Shaw Industries, Inc.*, 2013 WL 2950600, *11 (N.D. Cal. June 14, 2013) (holding that it was "reasonable to assume that each putative class member suffered at least one violation during any given pay period, resulting in an inaccurate wage statement," in light of the plaintiff's allegations "about the pervasiveness of the policies that are the subject of the first three causes of actions" for failure to pay minimum wages, failure to pay overtime wages, and failure to provide meal periods. 2013 WL 2950600, at *11.)

33.  Nonetheless, Defendant's conservative calculation of the amount placed into controversy by Plaintiff's claim for non-compliant wage statements is at least **$7,866,050** (157,321 x $50.00). Though it is appropriate to include wage statements issued since May 15, 2024, Defendant uses only the 157,321 wage statements that have been issued to putative class members between January 1, 2025 and February 20, 2025. Kish Decl. ¶ 7. Defendant further only applies the lower $50 penalty (not the higher $100 penalty for subsequent violations, as alleged in the Complaint). Defendant reserves the right to provide additional evidence in opposition to any remand motion, including to provide the number of wage statements issued to putative class members at any time since May 15, 2024, instead of those issued between January 1, 2025 and February 20, 2025; and to apply the $100 penalty claimed for subsequent wage statements rather than the $50 penalty.

34. Consequently, the amount placed in controversy by the Inaccurate Wage Statement Claim is at least **$7,866,050**, which exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

### III. **DEFENDANT HAS SATISFIED THE REMAINING REMOVAL REQUIREMENTS**

35. In accordance with 28 U.S.C. § 1446(a), this Notice of Removal is filed in the District in which the action is pending. The Superior Court of the State of California for the County of Los Angeles is located within the Central District of California. Therefore, this action is properly removed to this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

36. In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendant are attached as Exhibits to this Notice.

37. In accordance with 28 U.S.C. § 1446(d), a copy of this Notice is being served upon counsel for Plaintiff, and a notice will be filed with the Clerk of the Superior Court of California for the County of Los Angeles. Notice of compliance shall be filed promptly afterward with this Court.

38. As required by Federal Rule of Civil Procedure 7.1, Defendant has concurrently filed its Certification of Interested Parties and Disclosure Statement.

/ / /

/ / /

/ / /

/ / /

39. Finally, in the event this Court has any question regarding the propriety of this Notice of Removal, Defendant requests that the Court issue an Order to Show Cause so that Defendant may have an opportunity to more fully brief and submit further evidence further supporting the basis for this removal.

DATED: July 3, 2025

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: */s/ Melis Atalay*
Paloma P. Peracchio
Mitchell A. Wrosch
Melis Atalay

Attorneys for Defendant
WAL-MART ASSOCIATES, INC.